IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TODD ANTHONY WILSON | : | CIVIL ACTION |
| Petitioner | : | |
| v. | : | |
| | : | |
| RAYMOND LAWLER, et al. | : | |
| Respondents | : | No. 09-4336 |

### MEMORANDUM

J. WILLIAM DITTER, JR., Sr. J.                                August 17, 2011

Presently before this court is a pro se petition for writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254 by Todd Anthony Wilson, the response thereto, and

Wilson's reply.  Wilson, who is currently incarcerated in the State Correctional Institution

in Camp Hill, Pennsylvania, challenges his incarceration for robbery, aggravated assault,

reckless endangerment, theft, and carrying a firearm without a license.  For the reasons

that follow, the petition will be denied.

### FACTS AND PROCEDURAL HISTORY:

On November 2, 2003, Wilson was charged with numerous crimes related to the

armed robbery of a grocery store owner.  The state court summarized the facts leading up

to his arrest as follows:

> On the morning of November 1, 2003, a masked gunman entered a store
> owned by Davinder Singh and robbed the owner at gunpoint, the gunman
> escaping with a stack of mostly one-dollar bills.  As the gunman fled the
> store, located at 269 Beech Street, the owner gave chase and ended up being
> shot in the shoulder by the thief.  When police arrived, the victim described
> his assailant as a black male in his late twenties to early thirties, and further
> noted that the gunman was wearing a black hooded sweatshirt, jeans, and a

ski mask.  The victim added that his assailant was about five foot eleven inches tall, with a stocky build, and weighed approximately 220 to 225 pounds.

******** 

Later this same day, [Wilson] was arrested at his mother's residence on an unrelated warrant, and [Wilson's] mother consented to a search of her home.  During the search, police located in a laundry bag belonging to [Wilson], a 38 caliber revolver with a wooden handle and two rounds missing from the five-round cylinder.  Subsequent to his arrest, [Wilson] explained to officers that he had found the revolver in an alley near his house after the robbery, and he had kept it despite suspecting it had been used in a crime.  When police told [Wilson] that a witness had seen him with a gun *prior* to the robbery, [Wilson] conceded possession of a weapon, but explained that particular weapon was "another gun" he had possessed and sold on the street.

On the morning of November 2, 2003, police served a search warrant at the residence [Wilson] shared with his girlfriend, Maria Mauras, located at 352 Beech Street, about a block and a half from the scene of the robbery, and recovered a black hooded sweatshirt from his bedroom.  Mauras told officers [Wilson] had come home that morning and put the sweatshirt on the bed.  She added that [Wilson] had a "serious drug problem and had recently stole her jewelry so that he could get drugs."  Immediately thereafter, police charged [Wilson] with numerous offenses related to the robbery and the shooting of the grocery store owner.

Commonwealth v. Wilson, No. 385 EDA 2006, slip op. at 2-4 (Pa. Super. Sept. 11, 2006)

(unpublished memorandum) (emphasis in original) (citations and footnote omitted)

On July 7, 2004, Wilson filed a motion to suppress alleging that his arrest was

unlawful and seeking the exclusion of physical evidence as well as statements he had

given to police during his interview.  After a hearing on April 7, 2005, Wilson's motion

to suppress was denied on July 2, 2005.  On October 24, 2005, a jury in the Court of

Common Pleas of Montgomery County found Wilson guilty of robbery with the infliction of serious bodily injury, robbery with the threat of serious and immediate injury, aggravated assault with a deadly weapon, reckless endangerment, theft by unlawful taking of movable property, and carrying a firearm without a license. Wilson was sentenced to 22 to 47 years of imprisonment.

Wilson filed a direct appeal arguing that:

1) the trial court erred in admitting evidence found during the search of Wilson's bag by police because Wilson's mother did not have the authority to consent to the search;

2) the trial court erred in admitting the evidence found during the search of Wilson's bag because the consent given by Wilson's mother was coerced by the police;

3) the trial court erred in not suppressing Wilson's written and oral statements to police as they are tainted by the illegal search of Wilson's bags and are therefore fruits of a poisonous tree;

4) the trial court erred in finding the search warrant and attached affidavit of probable cause contained enough credible information to enable the issuing authority the ability to make an independent determination that evidence of a crime would be found at the premises sought to be searched; and

5) the trial court erred in denying Wilson's motion for judgment of acquittal as evidence presented by the Commonwealth was insufficient to support a finding of guilt beyond a reasonable doubt.

The Pennsylvania Superior Court affirmed the judgment of sentence on September 11, 2006. Commonwealth v. Wilson, No. 385 EDA 2006 (Pa. Super. Sept. 11, 2006) (unpublished memorandum). The Pennsylvania Supreme Court denied Wilson's petition for allowance of appeal on February 8, 2007. Commonwealth v. Wilson, No. 838 MAL

2006 (Pa. Feb. 8, 2007).

On March 1, 2007, Wilson filed a pro se petition in the state court under the Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, et seq. Following the appointment of counsel, the PCRA Court held a hearing on October 9, 2007. The court denied Wilson's PCRA petition on October 11, 2007. Wilson filed an appeal claiming:

> 1) ineffective assistance of counsel for failing to object to prosecutorial misconduct when the prosecutor stated facts that were not in evidence;
>
> 2) ineffective assistance of counsel for failing to object to prosecutorial misconduct when the prosecutor misstated facts regarding the victim in closing argument;
>
> 3) ineffective assistance of counsel for failing to object to prosecutorial misconduct when the prosecutor elicited "misstatements of facts" from witness Maria Mauras; and
>
> 4) ineffective assistance of counsel for failing to cross-examine a Commonwealth witness on her inconsistent statements and for failing to call Officer Keifrider as a rebuttal witness in order show that the Commonwealth's witness gave biased and false testimony.

On November 10, 2008, the Superior Court affirmed the denial of the PCRA petition. Commonwealth v. Wilson, No. 2950 EDA 2007 (Pa. Super. Nov. 10, 2008) (unpublished memorandum). Wilson's petition for allowance of appeal to the Supreme Court of Pennsylvania was denied on September 9, 2009. Commonwealth v. Wilson, No. 74 MAL 2009 (Pa. Sept. 9, 2009).

Wilson filed a petition for a federal writ of habeas corpus on September 23, 2009, and subsequently filed an amended petition on February 1, 2010, claiming:

4

1) prosecutorial misconduct for misstating the evidence during trial and in closing argument;

2) ineffective assistance of trial and appellate counsel for failing to object to instances of prosecutorial misconduct during trial and in closing argument;

3) the warrantless search of Wilson's mother's home violated Wilson's Fourth Amendment rights;

4) Wilson's mother did not have authority to consent to the search of Wilson's bags, thus, the ensuing search violated his Fourth Amendment rights; and

5) the evidence produced at trial was insufficient to sustain a conviction for robbery and aggravated assault.

Respondents have filed an answer to Wilson's habeas petition asserting that Wilson is not entitled to federal habeas relief because his claims are non-cognizable and meritless. Wilson has filed a reply thereto.

**DISCUSSION:**

 **A. Standard of Review**

 Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden

of rebutting this presumption by clear and convincing evidence.  Werts v. Vaughn, 228

F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

### B.    Claims

#### 1.    Prosecutorial Misconduct

In his first claim, Wilson argues that the prosecutor violated his right to due

process by misstating evidence during trial and in closing argument.  A federal court,

absent unusual circumstances, should not entertain a petition for writ of habeas corpus

unless the petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254.

"The exhaustion doctrine is designed to give the state courts a full and fair opportunity to

resolve federal constitutional claims before those claims are presented to the federal

courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Lines v. Larkins, 208

F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir.

1992)).  A petitioner typically exhausts his federal claims by fairly presenting each claim

at each stage of the state's established review process.  Villot v. Varner, 373 F.3d 327,

337 (3d Cir. 2004).  The habeas corpus petitioner has the burden of proving exhaustion of

all available state remedies.  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997)

(citing 28 U.S.C.A. § 2254).

Wilson's claim of prosecutorial misconduct was not properly presented to the state

court and as a result, is unexhausted.  In support thereof, I note that Wilson did not

present any claims of prosecutorial misconduct to the state court on direct appeal and on

collateral appeal, presented only layered claims of ineffective assistance of counsel for failure to object to prosecutorial misconduct.[1] See Evans v. Court of Common Pleas, Del. Co., Pa., 959 F.2d 1227, 1231 (3d Cir. 1992) ("the same method of legal analysis must be available to the state court as will be employed by the federal court"); see also Commonwealth v. Wilson (PCRA Court, Feb. 29, 2008), slip op. at 3; Commonwealth v. Wilson, No. 2950 EDA 2007, slip op. at 7 (Pa. Super. Nov. 10, 2008).  I will, however, excuse exhaustion pursuant to 28 U.S.C. § 2254(b)(1), because a return to state court would be futile due to "an absence of available State corrective process."  Lines, 208 F.3d at 162.  The only way in which Wilson could present this claim in the state court at this time is by filing a second PCRA petition.  See Szuchon v. Lehman, 273 F.3d 299, 324 n.14 (3d Cir. 2001).  However, any such petition would be time-barred by the PCRA's statute of limitations.[2]

     Although exhaustion is excused, Wilson is considered to have procedurally

---

[1] In his various habeas filings, Wilson has characterized his claims as both independent claims of prosecutorial misconduct and layered claims of ineffective assistance of counsel for failing to object to prosecutorial misconduct.  To the extent that, on collateral appeal, Wilson properly presented the state courts with his layered claims of ineffective assistance of counsel for failure to object to prosecutorial misconduct, I will review the merits of those claims infra.

[2] Pursuant to the amended PCRA, effective January 16, 1996, collateral actions must be filed within one (1) year of the date the conviction at issue becomes final.  42 Pa. Cons. Stat. Ann. § 9545(b)(1); see also, e.g., Lines, 208 F.3d at 164 n.17 (noting that the Pennsylvania Supreme Court has held that the time restrictions for seeking relief under the PCRA are jurisdictional) (citing Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999)).  For purposes of the PCRA, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of the United States, or at the expiration of time for seeking the review.  42 Pa. Cons. Stat. Ann. § 9545(b)(3).  Wilson's conviction became final in 2009.

defaulted his claim because state procedural rules bar him from seeking further relief in state courts.  Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001).  The principal exception to this general rule precluding federal review of habeas claims that have been procedurally defaulted is for petitioners who can show "cause and prejudice" for the procedural default or that a "miscarriage of justice" will occur absent review.  Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004); Cristin v. Brennan, 281 F.3d 404, 414 (3d Cir. 2002).  The Supreme Court has delineated what constitutes "cause" for the procedural default: the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Werts, 228 F.3d at 192-193 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Id. at 193 (citing Carrier, 477 U.S. at 494).  This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial.  Id.

In the alternative, if the petitioner fails to demonstrate cause and prejudice for the default, the federal court may also consider a defaulted claim if the petitioner can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 748 (1991).  In order to satisfy the fundamental miscarriage of justice exception, the Supreme Court requires that the

8

petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Carrier, 477 U.S. at 496). To satisfy the "actual innocence" standard, a petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Schlup, 513 U.S. at 327.

Wilson has not provided this court with an adequate explanation for his failure to properly present this claim to the state courts. As a result, he has not shown cause to excuse his procedural default.[3] Carrier, 477 U.S. at 488. Moreover, because Wilson makes no colorable showing of innocence, he has failed to demonstrate that a miscarriage of justice will result if his claim is not reviewed. Coleman, 501 U.S. at 748; Schlup, 513 U.S. at 327 (citing Carrier, 477 U.S. at 496). Consequently, federal review of this claim is foreclosed.[4]

### 2.    Ineffective Assistance of Counsel

Wilson next contends that trial counsel was ineffective for failing to object to instances of prosecutorial misconduct during closing argument and that appellate counsel

---

[3] Because no cause has been demonstrated, I need not address the prejudice requirement. Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982) (because petitioner lacked cause for default, the court need not consider whether he also suffered actual prejudice).

[4] While I recognize that Respondents have not presented the defense of procedural default with regard to Wilson's independent claims of prosecutorial misconduct, in the interest of comity, federalism and judicial efficiency, I have decided to raise the issue of procedural default sua sponte. Sweger v. Chesney, 294 F.3d 506, 520-21 (3d Cir. 2002) (holding courts may consider sua sponte whether procedural default bars claim).

was ineffective for failing to properly present the claims on appeal.  Claims of ineffective

assistance of counsel are generally governed by Strickland v. Washington, 466 U.S. 668

(1984).  In Strickland, the United States Supreme Court set forth the standard for a

petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made errors
> so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

Id. at 687.

Because "it is all too easy for a court, examining counsel's defense after it has

proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable," a court must be "highly deferential" to counsel's performance and

"indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance."  Strickland, 466 U.S. at 689.  In determining

prejudice, "the question is whether there is a reasonable probability that, absent the errors,

the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

Because Wilson has presented layered claims of ineffective assistance of counsel, I

must determine whether Wilson's right to effective assistance of counsel on direct appeal,

see Evitts v. Lucey, 469 U.S. 387, 393-94 (1985), was violated when the attorney who

represented him at that stage failed to argue that trial counsel had rendered ineffective

10

assistance for failing to present his claims of prosecutorial misconduct.  In order to satisfy

the first prong of the <u>Strickland</u> test, Wilson is required to show that appellate counsel's

failure to properly present the abovementioned arguments fell outside "the wide range of

reasonable professional assistance; that is, [he would have to] overcome the presumption

that, under the circumstances, the challenged action 'might be considered sound

[appellate] strategy.'"  <u>Buehl v. Vaughn</u>, 166 F.3d 163, 173-74 (3d Cir. 1999) (citing

<u>Strickland</u>, 466 U.S. at 689).  A petitioner satisfies <u>Strickland's</u> prejudice prong by

demonstrating a reasonable probability that he would have prevailed on appeal if the issue

had been presented.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000).

### a)    Wilson's Statement to Police

In his first layered claim of ineffective assistance of counsel, Wilson argues that

the prosecutor engaged in misconduct during closing argument when she argued: "But

[Wilson] does admit that that gun is loaded.  He does admit that he was at the scene at

8:15, that same day."  (N.T. 10/26/05, at 35).  Wilson argues that this statement

mischaracterizes his statement to police.

Although Wilson is not directly claiming prosecutorial misconduct, I must first

determine whether the prosecutor's disputed comments violated Wilson's right to due

process before I can determine whether trial counsel's failure to object and subsequently

present these claims on appeal constituted ineffective assistance of counsel.  <u>See</u>, <u>e.g.</u>,

<u>United States v. Miles</u>, 53 Fed. Appx. 622, 630 (3d Cir. 2002).  In <u>Smith v. Philips</u>, 455

U.S. 209, 219 (1982), the United States Supreme Court held that the touchstone of due

process analysis in cases alleging prosecutorial misconduct is the fairness of the trial

rather than the culpability of the prosecutor.   The standard is not whether the prosecutor's

remarks were undesirable or even universally condemned, but rather, whether the

prosecutor's remarks "so infected the trial with unfairness as to make the resulting

conviction a denial of due process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986)

(quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)); see generally Caldwell v.

Mississippi, 472 U.S. 320, 338 (1985) (warning against "holding every improper and

unfair argument of a state prosecutor to be a federal due process violation").

     In rejecting Wilson's claim that counsel was ineffective for failing to pursue the

instant claim of prosecutorial misconduct, the Superior Court reasoned:

> According to [Wilson], the prosecutor's argument was the equivalent to
> arguing that [Wilson's] statement places him at the scene with a loaded gun,
> which was a mischaracterization of his statement to police.  We disagree . . .
> [T]he prosecutor stated that [Wilson] admitted to being at or near the scene
> of the crime at 8:15 a.m.  She also stated that [Wilson] admitted to
> possessing a loaded gun.  In making his argument, [Wilson] essentially
> combines the two points made by the prosecutor and insinuates them
> together into a single statement.  However, . . . the statement from the
> prosecutor did not combine the two points to assert that [Wilson] had
> admitted to being at the scene with a loaded gun.  As such, a literal reading
> of the statement of the prosecutor defeats [Wilson's] argument.

Commonwealth v. Wilson, No. 2950 EDA 2007, slip op. at 8 (Pa. Super. Nov. 10, 2008)

(citations omitted).  The court went on to find that the prosecutor's comments were

"reasonably accurate descriptions" of Wilson's statement and that, when reviewed in

context, were a fair response to Wilson's defense that he did not commit the robbery at issue.[5]  Id. at 10 ("Placed in context, the prosecutor was arguing that despite [Wilson's] contention that he did not commit the robbery, he certainly had no alibi defense, i.e., a physical inability to have committed the crime in question, as [Wilson] was admittedly in the vicinity and even admitted to possessing a gun that day.").

Under Pennsylvania law, it is well established that a prosecutor is free to argue that the evidence leads to guilt and is permitted to suggest all favorable and reasonable inferences that arise from the evidence.  Commonwealth v. Rios, 684 A.2d 1025, 1032-1033 (Pa. 1996) (citing Commonwealth v. Sam, 635 A.2d 603, 608 (Pa. 1993)); see also United States v. Werme, 939 F.2d 108, 117 (3d Cir. 1991) ("[t]he prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence").  A prosecutor may also argue his case with logical force and vigor.  Id. (citing Commonwealth v. D'Amato, 526 A.2d 300, 309 (Pa.

---

[5] Earlier in her closing argument, the prosecutor expanded upon the argument that, despite his mistaken identity defense, Wilson had opportunity to commit the crimes at issue:

> Opportunity.  Does [Wilson] have the opportunity to commit the crime? Obviously if [Wilson] was in another state or another place where it was impossible for him to commit this crime, it couldn't be him, right?  Well, [Wilson] himself in his statement to the police, he places himself at the scene of the crime, at 8[:]15 he tells the police that he saw police outside, he saw a commotion outside Dino's.  He also tells you that the only other place that he was that morning was 352 Beech Street at his girlfriend's house.  Well ladies and gentlemen, if you remember, that's half a block away from the attempted murder scene.

(N.T. 10/26/05, at 27-28).

1987)).  After objectively evaluating the merits of the state court judgment, I am convinced that the court's decision can reasonably be justified under <u>Strickland</u>.  As the state court points out in the instant case, the prosecutor's argument was properly grounded in trial evidence and did not represent an unfair characterization of Wilson's statement to police.  Therefore, counsel cannot be deemed ineffective for failing to object thereto.

I also conclude that appellate counsel was not ineffective for failing to present this claim on appeal.  "One element of effective appellate strategy is the exercise of reasonable selectivity in deciding which arguments to raise." <u>Buehl</u>, 166 F.3d at 174; <u>see</u> <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986) (stating that the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy") (quoting <u>Jones v. Barnes</u>, 463 U.S. 745, 751-752 (1983)); <u>see</u> <u>also</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 287-288 (2000) (to demonstrate ineffective assistance of appellate counsel, petitioner must show that the issue not raised on appeal "was clearly stronger than issues that counsel did present").  In this case, in light of the fact that the underlying claim of prosecutorial misconduct has no merit, I find that it was reasonable for appellate counsel to conclude that it was unlikely that he could prevail on this claim and that it was therefore strategically unwise to select this argument on direct appeal.  Accordingly, this claim is denied.

14

### b)     Identification of the Masked Robber

In his second layered claim of ineffective assistance of counsel, Wilson objects to the following portion of the prosecutor's closing argument:

> Well, you heard testimony from Dino [the victim] that when [Wilson] was going down the street after he held him up, that Dino made a noise on the basement thing outside the door. [Wilson] turned around, he quickly went behind the van. He had been taking off his mask, well, that mask went right down. [Wilson] was behind the truck when Dino was coming out. And [Wilson] came out, lifted his arm, aimed right at Dino, he didn't want to be found.

(N.T. 10/26/05, at 27). In addressing this claim, the state courts focused on whether the prosecutor had implied that the victim observed Wilson's face, thereby directly contradicting the victim's testimony that he did not see the perpetrator. (N.T. 10/24/05, at 71).

In dismissing this claim, the state court concluded that the prosecutor's statement "does not unequivocally convey" that the robber's face was exposed when he was taking off his mask, but rather could have been interpreted to mean that the robber successfully obscured his face when he realized that he was being pursued by the victim. Commonwealth v. Wilson, No. 2950 EDA 2007, at 12 (Pa. Super. Nov. 10, 2008). I agree. The prosecutor's description of the events surrounding the shooting of the victim does not directly convey the idea that the victim was able to see the identity of his shooter. It follows that trial counsel cannot be deemed ineffective for failing to object to the prosecutor's argument and appellate counsel cannot be found to have rendered

15

constitutionally ineffective assistance in failing to raise this claim on direct appeal.

Buehl, 166 F.3d at 174.  Consequently, this claim is denied.[6]

      **c)**      **Gun Evidence**

In his third layered claim of ineffective assistance of counsel, Wilson contends that

---

[6] Wilson contends that, in this claim, among others, the state court misconstrued his argument.  He claims that he was actually contesting the fact that the prosecutor specifically identified him as the perpetrator of the crimes at issue.  See Pet'r Argument (Doc. No. 11), at "B."  I conclude that any such claim is meritless.  In his charge to the jury, the trial judge first instructed the jury that closing arguments by the Commonwealth and defense did not "constitute the law that you will apply in this case, nor are they a part of the evidence and you should not consider them as such."  (N.T. 10/26/05, at 66).  The court went on to state:

> [Y]ou are not required to accept the arguments of either attorney.  It is for you and you alone to decide this case based on the evidence as it was presented from the witness stand and in accordance with the instructions that I am now giving to you.

> The personal beliefs of the attorneys, if expressed as to guilt or innocence of the defendant, are not to be considered for any purpose whatsoever in your deliberations.  If I, as the Judge in this charge or Counsel in their closing arguments say something is a fact, which you don't recall to be a fact, ignore what we've said to be a fact because as I said earlier, it's your collective recollection that controls.

(N.T. 10/26/05, at 66-67).  Juries are presumed to follow the instructions they are given.  See generally Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.").  Given the trial judge's strong admonition to the jury to disregard any expression of guilt by counsel, I find no evidence to support the argument that the jury would be unable to follow the court's instruction.  As a result, I conclude that any alleged error in the Commonwealth's closing did not have a "substantial and injurious effect or influence in determining the jury's verdict."  California v. Roy, 519 U.S. 2, 5 (1996), reh'g denied, 519 U.S. 1071 (1997) (citations omitted).  Accordingly, there was no prejudicial impact arising from counsel's failure to object to the prosecutor's argument or his failure to present any such claim on direct appeal.  Buehl, 166 F.3d at 174.

the prosecutor mischaracterized evidence when she stated that Commonwealth witness

Maria Mauras saw Wilson wrapping up a gun and placing it in a laundry bag.  (N.T.

10/26/05, at 33).  In reviewing this claim, the state court acknowledged that the evidence

did not support this representation in the prosecutor's closing.  Commonwealth v. Wilson,

No. 2950 EDA 2007, slip op. at 12-13 (Pa. Super. Nov. 10, 2008) (citations omitted).

Nevertheless, the court failed to find that counsel had been ineffective because trial

counsel chose not to object as a matter of trial strategy.  Id.

I conclude that the state courts' disposition of this claim is not contrary to, or an

unreasonable application of, federal law.  At Wilson's PCRA hearing, trial counsel was

questioned about the prosecutor's closing statement and more specifically, the

prosecutor's statements regarding Maria Mauras.  (N.T. 10/9/07, at 24-25, 27-28).  In

response, trial counsel stated that, when viewed in its entirety, the prosecution's closing

argument represented a "fair extrapolation" of the evidence which, he opined, did not rise

to the level of prosecutorial misconduct.  (Id. at 25-28).  Trial counsel also testified that in

an attempt to limit the harm to the defense, he did not object to the prosecutions's closing

argument because any objection would have drawn "more attention to the point that [the

prosecutor] was making."  (Id. at 28).

Pursuant to Strickland, I must try to "eliminate the distorting effects of hindsight

. . . and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466

U.S. at 689.  In an attempt to minimize what trial counsel viewed as an overall damaging

body of evidence, counsel chose not to draw attention to the prosecutor's closing by lodging an objection to one specific detail.  I conclude that trial counsel's stated explanation of his trial strategy was constitutionally sufficient.  For the reasons previously outlined, I also believe that it was reasonable for appellate counsel to conclude that it was unlikely that he could satisfy Strickland's prejudice test on this claim and that it was therefore strategically unwise to select this argument on direct appeal.  Consequently, I conclude that Wilson's appellate counsel did not render constitutionally ineffective assistance.  Buehl, 166 F.3d at 173-74.  Accordingly, this claim is denied.

### 3.    Fourth Amendment Claims

In claims three and four, Wilson asserts that his conviction was based on evidence that was obtained in violation of the Fourth Amendment.  More specifically, Wilson claims that his Fourth Amendment right to be free of unreasonable searches and seizures was violated by the search of his mother's home because the search was conducted without a warrant and because his mother did not have authority to consent to the search of the bags found in her home.  Wilson's Fourth Amendment claims are governed by the Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976), which states:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

Id., 428 U.S. at 494 (footnotes omitted); see also Cardwell v. Taylor, 461 U.S. 571 (1983)

(per curiam) (consideration of a claim that evidence admitted at trial was the fruit of an illegal arrest could not be considered in a habeas corpus petition as long as the state courts had afforded a full and fair opportunity to litigate that claim).  The Supreme Court noted that the exclusionary rule "is not a personal constitutional right," and that the rule is not designed to redress the injury to a privacy interest that results from a Fourth Amendment violation.  Id. at 486.  "The Court reasoned that the incremental benefit in deterring illegal police conduct by applying the exclusionary rule in a habeas proceeding did not outweigh the cost to society of excluding relevant, reliable evidence in a criminal prosecution." Gilmore v. Marks, 799 F.2d 51, 54-55 (3d Cir. 1986), cert. denied, 479 U.S. 1041 (1987). "Even otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them."  Deputy, 19 F.3d at 1491 (citing Gilmore, 799 F.2d at 57 (rejecting argument that erroneous determination of habeas petitioner's Fourth Amendment claim overcomes Stone because claim actually sets forth a due process violation)).

Wilson does not claim that he was denied an opportunity to present and argue his Fourth Amendment claims.  Indeed, he had a full and fair hearing on his motion to suppress during a pre-trial hearing conducted on April 7, 2005.  (N.T. 4/7/05, at 80-110, 140-181).  Moreover, both the Superior Court and Pennsylvania Supreme Court considered his claims on appeal.[7]  Thus, I conclude that Wilson had a full and fair

_____

[7] Upon reviewing the suppression hearing transcript, the Superior Court noted that Wilson's mother "clearly understood her right to refuse the officer's request to search, provided

opportunity to litigate his Fourth Amendment claims in the state courts.  Accordingly,

Stone v. Powell, supra, bars consideration of claims three and four.

### 4.    Sufficiency of the Evidence

In his fifth claim, Wilson argues that the evidence produced at trial was

insufficient to sustain his conviction for robbery and aggravated assault because the

Commonwealth did not prove that he was the masked individual who robbed and shot Mr.

Singh.[8]  In support thereof, Wilson notes that the victim was unable to identify him at

trial, no forensic evidence linked him to the crime, and that the Commonwealth relied

heavily upon the testimony of Wilson's girlfriend, Maria Mauras, who did not witness the

crime.  See Mem. of Law in Supp. of Amended Habeas Corpus Petition (Doc. No. 10), at

23-30.

It has long been established that due process requires that a person can only be

convicted of the crime with which he is charged by proof of every element of the criminal

---

knowing, voluntary and intelligent consent, and was in no way coerced by the investigating
officer."  Commonwealth v. Wilson, No. 385 EDA 2006, slip op. at 7 (Pa. Super. Sept. 11, 2006)
(citing N.T. 4/7/05, at 165-181).  Moreover, the court found that there was "no indication
[Wilson] had a privacy interest in his mother's home, where he had not spent a night for
approximately four months prior to the shooting."  Id. at 8.  Therefore, the court rejected
Wilson's claims after concluding that Wilson's mother "had an unfettered right to agree to the
consent to search request, allowing officers to search her apartment without restriction, and that
she gave such permission knowingly and voluntarily, without undue influence."  Id. at 7-8.

[8] Although Respondents have not addressed this claim, the state court reviewed this claim
on direct appeal.  I conclude that the state court record and appellate decisions provide adequate
information upon which this court can base its decision on the merits of the claim.

offense beyond a reasonable doubt.[9]  Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re

Winship, 397 U.S. 358, 364 (1970); Davis v. United States, 160 U.S. 469, 488 (1895).  In

reviewing challenges to the sufficiency of the evidence, a court must determine "whether,

after reviewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable

doubt."  Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983) (quoting Jackson, 443

U.S. at 319) (emphasis in original).  The task of resolving differences in the testimony,

weighing the evidence, and drawing reasonable inferences from basic facts to ultimate

facts is reserved for the factfinder and is beyond the scope of federal habeas sufficiency

review.  Jackson, 443 U.S. at 319.

The AEDPA has limited a habeas court's role in reviewing a claim that the

evidence adduced at trial was insufficient to support a conviction.  Under 28 U.S.C.

§ 2254(d)(1), a writ of habeas corpus may be issued for evidentiary insufficiency only if

the state courts have unreasonably applied the Jackson "no rational trier of fact standard"

or the state equivalent of the Jackson standard.  See Kirnon v. Klopotoski, 620 F.Supp.2d

674, 686 (E.D. Pa. 2008).

I conclude that the state courts' application of the state court equivalent of the

---

[9] When reviewing a sufficiency of the evidence claim on habeas corpus review, federal courts look to the evidence the state considers adequate to meet the elements of a crime governed by state law.  Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir. 1997).

<u>Jackson</u> standard was within the bounds of reasonableness.[10]  As previously noted,

Wilson was convicted of, *inter alia*, aggravated assault and robbery.  The state court

applied relevant state law to the facts of the case as follows:

> A person commits the crime of robbery when he inflicts serious bodily injury upon another in the course of committing a theft.  18 Pa. C. S. A. § 3701(a)(1)(I).  Theft occurs when a person unlawfully takes movable property of another with intent to deprive him thereof.  18 Pa. C. S. A. § 3921(a).  In this case, [Wilson] committed a theft when he took the cash from Mr. Singh.  The fact that he shot Mr. Singh and fled with the money is circumstantial evidence that apparently persuaded the jury that [Wilson] did not intend to return the money.  Mr. Singh suffered serious bodily injury as a result of the gunshot wound that required him to remain hospitalized for 1½ days.  Therefore, the evidence was sufficient to support the conviction for robbery.
>
> A person commits the crime of aggravated assault when he intentionally or knowingly causes serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life.  18 Pa. C. S. A. § 2702(a)(1).  The use of a deadly weapon on a vital part of the body is sufficient to establish a specific intent to cause serious bodily injury. <u>Commonwealth v. Nichols</u>, 692 A.2d 181, 184-185 (Pa. Super. 1997).  The circumstantial evidence in this case shows that [Wilson] intentionally shot Mr. Singh for no reason other than to succeed in . . . stealing money from him.  The gunshot wound caused Mr. Singh to be hospitalized for 1½ days.  This court submits that such evidence is sufficient to show extreme indifference to the value of human life and a serious bodily injury.

<u>See</u> <u>Commonwealth v. Wilson</u>, No. CP-46-CR-0008739-2003 (Common Pleas Court,

April 11, 2006), slip op. at 5-6.  The state court also concluded that there was sufficient

evidence to support the finding that Wilson was the person who had robbed and shot the

---

[10] Although the state court did not specifically cite <u>Jackson</u>, Pennsylvania law comports with the <u>Jackson</u> standard.  <u>See</u> <u>Evans v. Court of Common Pleas, Delaware County</u>, 959 F.2d 1227, 1232 (3d Cir. 1992).

victim. In support thereof, the court noted that Wilson was positively identified in the general vicinity of the crime on the morning of the robbery wearing a black hooded sweatshirt similar to the sweatshirt worn by the perpetrator of the crime. See Commonwealth v. Wilson, No. CP-46-CR-0008739-2003 (Common Pleas Court, April 11, 2006), slip op. at 2-3, 5-6 (citing N.T. 10/24/05 at 20-21; 10/25/05 at 12-13); Commonwealth v. Wilson, No. 385 EDA 2006, slip op. at 16 (Pa. Super. Sept. 11, 2006). He was also seen carrying a gun similar to the one used in the robbery. Id. at 3 (citing N.T. 10/24/05, at 22; 10/25/05, at 14-15). In addition to matching the general physical description given by the victim, the state court also pointed out that a gun and sweatshirt, which Wilson admitted to possessing, were subsequently seized from Wilson's mother's home and his home, respectively. Commonwealth v. Wilson, No. 385 EDA 2006, slip op. at 16 (Pa. Super. Sept. 11, 2006).

When viewed in its entirety, there is sufficient evidence satisfying the elements of the crimes at issue. During the incident, a masked gunman robbed a store at gunpoint and then, after being pursued, shot the store owner in the shoulder. These actions satisfy the statutory elements for robbery and aggravated assault. Furthermore, Wilson matched the physical description given by the victim, was identified in the vicinity of the crime, and admitted to possessing a gun similar to the one used in the crime. It is reasonable for a jury to find that Wilson was guilty based upon this evidence. Although Wilson argues that his conviction is based solely upon circumstantial evidence, the Supreme Court has

explained that circumstantial evidence by itself may suffice for a finding of guilt beyond a reasonable doubt.  Jackson, 443 U.S. at 324-325.  Since the state courts' findings are not contrary to United States Supreme Court precedent nor an unreasonable determination of the facts, the state courts' findings will not be overturned.  28 U.S.C. § 2254(d). Accordingly, Wilson's claim is denied.

**CONCLUSION**:

After close and objective review of the arguments and evidence, I conclude that Wilson's petition for writ of habeas corpus is meritless.  Accordingly, Wilson's petition will be denied.

Similarly, because Wilson's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter.  See 28 U.S.C. § 2254(e)(2); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted).

An appropriate order follows.